**Jeffrey R. WEINGARD, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 21, 2011.

Decided Aug. 10, 2011.

Christopher H. Steward, Bensalem, for petitioner.

Erin K. Boylan, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Jeffrey R. Weingard (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) denying his application for benefits under authority of Section 402(e) of the Unemployment Compensation Law (Law).[1] In doing so, the Board reversed

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S.

§ 802(e). It provides, in relevant part, that "[a]n employe shall be ineligible for compen-

the Referee's determination that Claimant did not commit willful misconduct by asking subordinate employees to loan him money. Discerning no error, we affirm the Board.

Claimant was employed as a distribution specialist by the American Red Cross (Employer) from December 4, 2006, through June 2, 2010, earning $21.99 per hour. Claimant was fired after Employer learned that he attempted to borrow money from his supervisor and five subordinates. Claimant filed a claim for benefits, and the UC Service Center denied his application, concluding that Claimant had disregarded the standards of behavior that an employer has the right to expect of its employees.

Claimant appealed, and the Referee held a hearing. Rozena Kirby, Employer's regional human resources manager, testified that Claimant was terminated for attempting to borrow money from his co-workers. Specifically, Claimant first asked his supervisor for a $1,000 loan and then made the same request of five co-workers that he supervised.

Kirby stated that Claimant violated Employer's code of conduct, which states that an employee shall not "[o]perate or act in any manner that is contrary to the best interests of [Employer]." Certified Record (C.R.), Item 7, Employer's Exhibit 1, at 5. Kirby testified that Claimant received a handbook containing this directive when he was hired, and she produced Claimant's December 4, 2006, written acknowledgement of his receipt of the handbook. Employer viewed it as coercion to ask co-workers or subordinates for a loan, which was contrary to the best interests of Employer. Employer's disciplinary policy further provided that an employee was subject to immediate dismissal for "threat-

ening, intimidating, or coercing another staff member." C. R., Item 7, Employer's Exhibit 3, at 6. Because Claimant's conduct was coercive, he was subject to immediate dismissal.

Steve Sharkey, Claimant's supervisor, then testified that Claimant asked to borrow $1,000 to buy a motorcycle. Sharkey turned down the request, and that was the extent of the conversation. Later, Sharkey received a complaint from one of the employees supervised by Claimant that he asked her for a loan. When she refused, Claimant noted that she was working a lot of overtime and asked what she did with the money. She reported to Sharkey that the conversation made her uncomfortable. Sharkey reported this to Gladys Farnum.

Farnum, a distribution manager, testified next for Employer. Farnum explained that on May 13, 2010, Sharkey informed her of Claimant's attempts to borrow money from his co-workers. Based on this information, Farnum investigated and learned that Claimant had asked five subordinates for a loan. Farnum also interviewed Claimant. When Farnum informed Claimant it was inappropriate to ask subordinate employees for a loan, he replied that he had a friendly relationship with the employees and did not think it would create "an issue" to ask. C.R., Item 7, Notes of Testimony (N.T.), at 8.

Claimant, who appeared *pro se*, then testified. He explained that one of his co-workers, who was having financial difficulties, decided to sell a motorcycle that Claimant wanted to buy. Claimant's poor credit made it impossible to get a bank loan, so he asked Sharkey for a loan. Claimant testified that when he asked the five other employees for a loan, he did not threaten them in any way or think the

sation for any week ... [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e).

request would make them uncomfortable because they were all on friendly terms. The week after it happened, Claimant apologized to everyone. He stated that the investigation went on for three weeks, and he was surprised when he was terminated.

The Referee found that Employer had the burden of establishing a rule violation and failed to meet it. The Referee observed that Employer's policy did not address loans to or from subordinates or state that requesting such loans would be grounds for immediate termination. The Referee was not persuaded that Claimant's conduct amounted to coercion. The Referee reasoned that had Employer really believed Claimant's conduct was egregious, it would have fired him immediately, not three weeks later. The Referee reversed the decision of the UC Service Center and awarded Claimant benefits.

■■■ Employer appealed to the Board. The Board found that Employer established the existence of a policy prohibiting Claimant from acting in a manner contrary to Employer's best interests. It also found that Claimant violated this policy by asking his supervisor and subordinates to borrow money. Claimant's belief that his co-workers were his friends did not establish good cause for violating the policy. The Board also found that Claimant's attempt to borrow money from his subordinates fell below the reasonable standards of behavior that an employer has a right to expect of its employees. The Board reversed the decision of the Referee. Claimant then petitioned for this Court's review.[2]

On appeal, Claimant presents four issues for our review. First, he contends that the Board's Finding of Fact No. 9 is not supported by substantial evidence. Second, he alleges that his misconduct was too remote in time from his discharge to support a finding of willful misconduct. Third, he argues that the Board erred in holding that his importuning of employees for a loan violated Employer's policy, or alternatively, that the policy was unreasonable or good cause was established. Finally, he claims that the Board erred in holding that requesting a loan from a subordinate fell below the reasonable standards of behavior that an employer has a right to expect.

■■■ We begin with a review of the law on willful misconduct. Although not defined in the Law, the courts have established that it means the following:

(1) an act of wanton or willful disregard of the employer's interest;

(2) a deliberate violation of the employer's rules;

(3) a disregard of standards of behavior which the employer has a right to expect of an employee; [or]

(4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Altemus v. Unemployment Compensation Board of Review,* 681 A.2d 866, 869 (Pa. Cmwlth.1996). It is the employer's burden to establish that a claimant's conduct constituted willful misconduct. *Conemaugh,* 814 A.2d at 1288. Where willful miscon-

---

**2.** Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed or if the necessary findings of fact were supported by substantial evidence. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review,* 949 A.2d 338, 341 n. 2 (Pa.Cmwlth.

2008). However, "[w]hether an employee's action constitutes willful misconduct is a question of law subject to judicial review." *Conemaugh Memorial Medical Center v. Unemployment Compensation Board of Review,* 814 A.2d 1286, 1288 (Pa.Cmwlth.2003).

duct is based upon the violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and that the employee was aware of the rule. *Bishop Carroll High School v. Unemployment Compensation Board of Review,* 125 Pa.Cmwlth. 302, 557 A.2d 1141, 1143 (1989). Once employer meets this burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule. *Gillins v. Unemployment Compensation Board of Review,* 534 Pa. 590, 601 n. 3, 633 A.2d 1150, 1156 n. 3 (1993). With these principles in mind, we turn to Claimant's issues on appeal.

■ In his first allegation of error, Claimant challenges Finding of Fact No. 9, where the Board found that Employer received complaints from Claimant's subordinates about his loan requests.[3] Claimant contends that the evidence established that only one subordinate complained about being asked for a loan and, thus, the evidence does not support a finding of multiple complaints. Claimant is correct that the record proves one subordinate complaint. However, the designation of subordinate in the singular, as opposed to the plural, is not relevant to the ultimate outcome of the case. Nor does Claimant explain the relevance of this error to whether he committed willful misconduct. We acknowledge the error but conclude, nonetheless, that it does not provide a basis for reversal.

■ In his second allegation of error, Claimant argues that Employer waited too long to act upon his alleged misconduct. The record shows that on May 14, 2010, Claimant made his loan requests, but Employer did not terminate his employment until June 2, 2010. Claimant argues that this delay bars a holding of willful misconduct and in support cites *Tundel v. Unemployment Compensation Board of Review,* 44 Pa.Cmwlth. 312, 404 A.2d 434 (1979).

In *Tundel,* the claimant was terminated for falling asleep on the job and for occasional tardiness. The claimant's own testimony established the sleeping incident. The claimant stated that in the final hour of a 16–hour shift, he fell asleep. The incident occurred on May 19th, and the claimant was fired 25 days later. This Court concluded that the delay in firing the claimant made it unlikely that the employer deemed it to be a grave matter. Accordingly, we held that the incident was not willful misconduct.[4]

As noted by the Board, and conceded by Claimant, *Tundel* has been distinguished by this Court on numerous occasions, most recently in *Raimondi v. Unemployment Compensation Board of Review,* 863 A.2d 1242 (Pa.Cmwlth.2004). In *Raimondi,* a gas meter reader was terminated for conducting personal business on company time. There was a 74–day delay between the discovery of the alleged misconduct and the discharge. We explained that the delay of discipline did "not turn on length of time alone." *Id.* at 1246. Instead, the Court considered the reason provided by the employer for the delay and whether there was "no action on the part of the employer indicating that the employer condoned the claimant's conduct...." *Id.* We specifically distinguished *Tundel,* wherein the employer had not provided any reason for the delay or any evidence

---

3. The Board's Finding of Fact No. 9 states: "On May 13, 2010, the employer received complaints from the claimant's subordinates who reported that the claimant had asked to borrow money from them." Board Decision at 2.

4. Additionally, we held that occasional lateness without a promulgated standard policy or any warnings of the consequences did not equal willful misconduct.

that it was concerned with the sleeping incident when it occurred. We clarified in *Raimondi* that there must be an *"unexplained* substantial delay between the claimant's misconduct and the employer's act to terminate the claimant...." *Id.* at 1247 (emphasis in original). Because the employer in *Raimondi* established that its investigation and administrative review process lasted 74 days, we concluded that the employer had not condoned the claimant's conduct.

Here, Farnum testified about Employer's investigation. She stated that on May 14, 2010, she interviewed Claimant, and he admitted that he had asked his supervisor and several subordinates for a loan on May 13, 2010. Farnum informed Claimant at the interview that his "behavior was inappropriate." C.R., Item 7, N.T. at 8. The following week, Farnum interviewed the employees that had been solicited for a loan. The discharge came two weeks later. Claimant testified that he was aware of the investigation and noted that he was not suspended during its pendency.

May 14, 2010, was a Friday, and Farnum began her investigation the next week. She immediately rebuked Claimant for asking his subordinates for a loan. This is distinguishable from *Tundel,* where the employer did not tell the claimant that his conduct was a problem and did not document his alleged misconduct. Claimant admitted that he was aware that the investigation was ongoing; he was anxiously awaiting the outcome. As in *Raimondi,* Employer established that it was investigating Claimant's actions, and there was no suggestion that Employer condoned Claimant's conduct. We reject Claimant's argument that Employer waited too long to discharge him.

In his third allegation of error, Claimant argues that his loan requests did not violate Employer's policy. Claimant argues that there was no policy that prohibited an employee from asking co-workers for a loan. Further, he argues that his loan request did not violate the general edict that an employee not act contrary to his employer's best interests. The Board counters that it is self-evident that attempting to procure a loan from subordinate employees is not acting in an employer's best interests. Neither Claimant nor the Board offers precedent in support of their respective positions.

To establish a rule violation, it is the employer's burden to establish the existence of the rule and that the claimant was aware of the rule. Here, Employer does not have a specific rule prohibiting employees from engaging in loan transactions with each other. The rule in question, which prohibits "operating or acting in any manner that is contrary to the best interests of Employer," is so general as to be meaningless to this appeal. *See Unemployment Compensation Board of Review v. Bacon,* 25 Pa.Cmwlth. 583, 361 A.2d 505, 507 (1976) (employer did not show conscious disregard of a policy that "actually sets no real standards of behavior or expectations of the employee which we could say that this claimant had consciously violated.") Claimant testified that he did not know there was a policy prohibiting him from soliciting loans from co-workers, and he did not believe that asking another employee for a loan harmed Employer's interest in any way. Employer provided no evidence to the contrary. We conclude that the Board erred in determining that Claimant knowingly violated a work policy.[5]

5. Because we conclude that Employer failed to establish that Claimant violated a known

work policy, we need not address Claimant's alternative arguments, *i.e.,* that the policy was

 We turn, then, to Claimant's final allegation of error, *i.e.,* whether his conduct constituted a disregard of the standards of behavior Employer has a right to expect. This was the Board's alternate basis for finding willful misconduct.

Claimant argues that if his actions fell below reasonable standards of behavior it would not have taken Employer 20 days to fire him, and he would not have been permitted to remain in his position while Employer investigated. He argues that asking co-workers for a loan is not unreasonable behavior.

This appears to be a case of first impression. The only precedent with any relevance is *Ravenell v. Unemployment Compensation Board of Review,* 32 Pa. Cmwlth. 138, 377 A.2d 1297 (1977), wherein the manager of elderly, low-income housing borrowed money from a tenant. The loan was not reduced to writing; did not provide for the payment of interest; or make any provisions for repayment in the event of a default. The manager was discharged for willful misconduct, specifically, for abusing his position of "authority and power." *Id.* at 1298. The Board found the manager ineligible for benefits by reason of his misconduct, and this Court affirmed. In doing so we criticized the terms of the loan because they were so favorable to the discharged manager. We stopped short of holding that the manager's request for a loan would have been improper in any circumstance.

Here, Claimant also used his position of authority in an unseemly way. He may not have used overt threats or direct coercion, but that fact is not dispositive of the issue. Claimant held the upper hand in the relationship with the employees he supervised. His request for a loan made at least one employee uncomfortable enough to report Claimant's request to Claimant's supervisor. There is unspoken, and implicit, coercion when a boss makes a request for a significant loan of an employee under his supervision. Claimant's misuse of his position as a supervisor violated the standards of behavior his Employer had a right to expect. Claimant's importuning of subordinates for a loan constituted willful misconduct.[6]

Accordingly, we affirm.

### ORDER

AND NOW, this 10th day of August, 2011, the order of the Unemployment Compensation Board of Review, dated October 18, 2010, is hereby AFFIRMED.

---

unreasonable or that he had good cause for violating it.

**6.** The loan in question was substantial, one that ordinarily would require bank financing, by Claimant's own admission. Borrowing $5 or $10 because one neglected to hit the ATM or forgot a wallet is a "loan" of a different type and character not addressed herein.