Concordia International Forwarding   :
Corporation,                         :
              Petitioner     :
                               :
        v.                     :
                               :
Unemployment Compensation Board  :
of Review,                     :        No. 609 C.D. 2019
             Respondent    :        Submitted: December 10, 2019

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                     FILED: January 3, 2020

          Concordia International Forwarding Corporation (Employer) petitions this Court for review of the Unemployment Compensation Board of Review's (UCBR) March 27, 2019 order reversing the Referee's decision and finding Ricardo Delgado (Claimant) eligible for UC benefits under Section 402(e) of the UC Law (Law).[1]  The sole issue before this Court is whether Employer met its burden of proving that Claimant committed willful misconduct.  After review, we affirm.

          Employer employed Claimant as a full-time warehouse supervisor from October 18, 2004 to October 24, 2018.  Employer is an airfreight forwarder and is certified by the Transportation Security Administration (TSA).  Employer provided Claimant training on TSA rules and procedures.  Claimant's job was to receive,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to willful misconduct).

reweigh, stage and screen cargo. Employer furnished Claimant additional training on TSA procedures after TSA fined Employer $80,000.00 for failure to correctly screen cargo during December 2017 and May 2018. On October 25, 2018, Employer terminated Claimant's employment.

Claimant applied for UC benefits. On December 3, 2018, the Duquesne UC Service Center determined that Claimant was eligible for UC benefits under Section 402(e) of the Law. Employer appealed and a Referee hearing was held. On January 11, 2019, the Referee reversed the UC Service Center's determination. Claimant appealed to the UCBR. On March 27, 2019, the UCBR reversed the Referee's decision. Employer appealed to this Court.[2]

Initially,

> Section 402(e) of the Law provides that an employee is ineligible for [UC] benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in a[] [UC] case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) **a deliberate violation of the employer's rules**; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; **or** (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Sipps v. Unemployment Comp. Bd. of Review*, 181 A.3d 479, 481 (Pa. Cmwlth. 2018) (quoting *Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000) (citation omitted; emphasis added)).

---

[2] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

Employer argues that the UCBR erred by concluding Employer did not meet its burden of proving willful misconduct because it did not show which TSA procedures Claimant failed to follow nor did it establish, testify or produce what training Claimant received pertaining thereto. Employer contends the fact that the specific TSA procedures that Claimant failed to follow were not produced or testified thereto does not preclude a finding of willful misconduct. Notwithstanding, Employer further asserts a violation of an unwritten policy can support a finding of willful misconduct.

This Court has held:

> Where willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and that the employee was aware of the rule. Once employer meets this burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule.

*Sipps*, 181 A.3d at 482 (quoting *Weingard v. Unemployment Comp. Bd. of Review*, 26 A.3d 571, 574-75 (Pa. Cmwlth. 2011) (citation omitted)).

Here, Employer's mid-Atlantic region Vice President Fred Havron (Havron) testified that Employer fired Claimant because TSA fined Employer $80,000.00 for failure to screen cargo correctly. Havron explained:

> [Referee] Okay. And so, this $80,000.00 fine was this over as [sic] a single incident or was the TSA . . .
>
> [Havron] It was two separate incidents. One in December . . .
>
> [Referee] Of which year?
>
> [Havron] 2017.
>
> [Referee] Okay.

3

[Havron] And then they came back for another inspection in May of 2018 and found that we were again negligent in this bidding [sic] process.

[Referee] And when did [] Employer become aware of the fine and alleged negligence of the screening process? When did they become aware of that from the TSA, sir?

[Havron] The date that [sic] at which we received the fine, [Claimant] was made aware of it, as well as the second fine. There were two separate fines that when we negotiated with the TSA to settle them as one single, you know, one combined fine.

Certified Record (C.R.) Item 11 at 7-8. With respect to the first fine, Havron related:

[Referee] Okay. All right. When did you become aware of the May, excuse me, the December 2017 fine?

. . . .

[Havron] So, we were aware that there was going to be a fine coming when they finished their inspection. Their inspection took about 10 days total because they would, you know, they would be here for a while. And then they would come back the next day. So, and in each instance, they were checking our number one, our training records. Number two our screening records -- screening log records. Then of course, number three, working with our screeners or with, you know, physically observing them. And then also, viewing their processes on camera.

[Referee] And why wasn't [Claimant's employment] terminated back in December or early January when [] Employer became aware of the fines at that time, sir?

[Havron] Well, our intent was to, you know, battle the TSA legally which we did. We hired, you know we have a lawyer, company lawyer. And we went through a process of, you know, multiple phone hearings and then an in-person hearing at their main office in New York. So, up until that point, you know, we were hopeful that maybe we could get the fines eliminated and be given a warning as, you know, as punishment for the failure to screen cargo properly.

4

C.R. Item 11 at 8-9. Havron expounded:

> [Referee]  And why did you maintain [Claimant] as an employee even after you didn't prevail as having just . . .
>
> [Havron] Actually, because we did -- **we went through some retraining** . . .
>
> [Referee]  Okay.
>
> [Havron]  . . . **and**, you know, **reiterated what the, you know, what the requirements and needs were**.  You know, as well as made every effort to eliminate any pressure to get the cargos screened by verbally expressing that it is okay to screen as much as you can.  And if you can't finish screening all the cargo, send cargo to the gateway unscreened.  Our gateway also has a screening operation.
>
> [Referee]  And that was conveyed to [Claimant] then, sir?
>
> [Havron] Multiple times, yes.

C.R. at 9 (emphasis added).

> Finally, with respect to the second fine, Havron described:
>
> [Referee]  Okay.  And then what happened that [sic] the final incident that failed inspection of May of 2018, sir?
>
> [Havron] Yeah, the final incident after that again, that was a second follow up.  We were making every effort to say no, you know -- what the TSA looks for is that we're following the procedure.  And there were times where, you know, [**Claimant**] **was following the procedure but not necessarily in the order that the TSA wanted it in.  So, there were instances where he was putting stickers on freight that was being considered screened, but yet he hadn't actually screened it up to that point**.  And most of what their findings were [sic] were through watching [closed-circuit television] footage.  And the TSA inspectors did also directly grab [Claimant] and question him and show him in the footage and, you know, inquire what exactly was the process that he was doing there.  You know, at which point, he really didn't have a good answer for them.

C.R. Item 11 at 9 (emphasis added).

> Based on the above, the UCBR concluded:

> [E]mployer is an air[]freight forwarder and is certified by TSA. [] [E]mployer gave [] Claimant training on TSA procedures. At the hearing, [] [E]mployer's witness testified that it was fined by TSA for an incident [sic] in December 2017 and May 2018. Although [] [E]mployer's witness testified that [] [C]laimant was following procedures but not in the order that TSA wanted it, [] [E]mployer did not show what TSA procedures [] [C]laimant was not following nor did [] [E]mployer show or testify to any procedures for which [] [C]laimant received training. [] [E]mployer has not carried its burden to show willful misconduct by [] [C]laimant. Therefore, [UC] benefits cannot be denied under Section 402(e) of the Law.

UCBR Dec. at 2. We discern no error in the UCBR's reasoning.

Essentially, Havron related that Employer was fined after an inspection; thereafter, Employer engaged in retraining, and during the next inspection Claimant "was following the procedure but not necessarily in the order that the TSA wanted it in. [] [T]here were instances where he was putting stickers on freight that was being considered screened, but yet he hadn't actually screened it up to that point." C.R. Item 11 at 9.

Nowhere in the testimony did Havron explain TSA's specific procedures or Claimant's particular training thereof. Employer presented only conclusory statements that Employer retrained Claimant on TSA's procedures and TSA fined Employer for violation of those procedures. Conclusory statements are not substantial evidence to support willful misconduct. *See New Kensington-Arnold Sch. Dist. v. Unemployment Comp. Bd. of Review*, 403 A.2d 1377 (Pa. Cmwlth. 1979) (testimony that the claimant engaged in immoral conduct was not sufficient to support willful misconduct); *Parke v. Unemployment Comp. Bd. of Review*, 393 A.2d 62 (Pa. Cmwlth. 1978) (testimony that accidents were preventable was not sufficient

6

to support willful misconduct).  Accordingly, the UCBR did not err by concluding Employer failed to meet its burden of proving willful misconduct.

For all of the above reasons, the UCBR's order is affirmed.


_____
ANNE E. COVEY, Judge

Concordia International Forwarding  :
Corporation,                       :
           Petitioner       :
                            :
       v.                   :
                            :
Unemployment Compensation Board  :
of Review,                    :       No. 609 C.D. 2019
          Respondent    :

## O R D E R

AND NOW, this 3rd day of January, 2020, the Unemployment Compensation Board of Review's March 27, 2019 order is affirmed.


_____
ANNE E. COVEY, Judge