IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michele Marie Drayer,                       :
                    Petitioner              :
                                            :
          v.                                :
                                            :
Unemployment Compensation                   :
Board of Review,                            :   No. 1212 C.D. 2019
                    Respondent              :   Submitted: January 10, 2020


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                 FILED:  February 7, 2020


          Michele Marie Drayer (Claimant) petitions this Court pro se[1] for review

of the Unemployment Compensation (UC) Board of Review's (UCBR) August 23,

2019 order affirming the Referee's decision denying Claimant UC benefits under

Section 402(e) of the UC Law (Law).[2]  The sole issue before this Court is whether the

UCBR erred by denying Claimant UC benefits under Section 402(e) of the Law.[3]

After review, we affirm.

---

[1] Claimant was represented by counsel at the Referee hearing.  At all other times, Claimant acted pro se.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to willful misconduct).

[3] In her "Statement of Question[s] Involved," Claimant presents two issues: (1) whether the UCBR erred because "there was insufficient evidence" to find that Claimant "willfully verbally abused the customer under a normal situation[;]" and (2) whether the UCBR erred by concluding that Claimant is ineligible for UC benefits under "Section 402(b) of the [Law]."  Claimant Br. at 7. Because the UCBR found Claimant ineligible for UC benefits under Section *402(e)* of the Law, not Section *402(b)* of the Law, and Claimant's first issue is subsumed in this Court's restatement of the issue, Claimant's first issue will be addressed therein.

Claimant was employed by Boscov's Department Store LLC (Employer) as a part-time sales associate from September 2016 until she was discharged on June 5, 2019. Employer has a policy against abusive or threatening language to customers, supervisors, or co-workers (Policy). The discipline for violating the Policy is immediate dismissal without a warning. Employer informed Claimant of the Policy. On June 4, 2019, a customer approached Claimant and asked to pay a bill. Claimant asked the customer if she had her credit card or her statement. Because the customer had only her driver's license, Claimant informed the customer she would have to go to customer service for assistance. The customer called Claimant a f*****g dyke and walked away. Claimant was upset, went upstairs to the customer service department and asked if the customer had paid her bill. Claimant was told no, and Claimant left to return to her department. On her way back to her department, Claimant ran into the customer and told the customer to never call someone a f****** d***. The customer began speaking to Claimant in Spanish, and Claimant told the customer to go back to Mexico. On June 5, 2019, Employer called Claimant into a meeting and discharged Claimant for her verbal altercation with the customer that violated the Policy.

Claimant applied for UC benefits. On June 20, 2019, the Scranton UC Service Center determined that Claimant was not eligible for UC benefits under Section 402(e) of the Law. Claimant appealed and a Referee hearing was held. On July 25, 2019, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR. On August 23, 2019, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[4]

---

[4] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Review*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

Claimant argues that the UCBR erred by denying her UC benefits. Initially,

> Section 402(e) of the Law provides that an employee is ineligible for [UC] benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in a[] [UC] case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) *a deliberate violation of the employer's rules*; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; **or** (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Sipps v. Unemployment Comp. Bd. of Review*, 181 A.3d 479, 481 (Pa. Cmwlth. 2018) (quoting *Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000) (citation omitted; emphasis added)).

> Where willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and that the employee was aware of the rule. Once employer meets this burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule.

*Sipps*, 181 A.3d at 482 (quoting *Weingard v. Unemployment Comp. Bd. of Review*, 26 A.3d 571, 574-75 (Pa. Cmwlth. 2011) (citation omitted)).

Claimant contends that Employer's Policy only focuses on the customer and not the employee. Claimant asserts that Employer should not have fired her because she was not trained regarding how to deal with abusive customers and she was very upset at the time of the incident.

3

At the Referee hearing, Claimant described:

C[laimant's] L[awyer] What was the discussion between you and [Employer's Human Resource Manager] Nicole?[5] What did you say to her, what did she say to you, et cetera?

C[laimant] I went in there and I told her, I said something really bad happened the night before. I said I had a customer that came up -- a customer came up to the window, and I had -- in the meantime, I was getting something for another customer in the fitting room. I went to get a pair of trousers for the customer that was in the fitting room and the woman came after me -- well, followed me. She followed me. She said, I want to pay my bill. I said to her, I will be right there I'm waiting on another customer, getting her a pair of pants. I proceeded to bring the pants back and the customer wanted to pay her bill. . . . I said to the lady, I said, you don't have your credit card, can I have your credit card. She said, well, this is my driver's license, take it. I said, I'm not sure I can really take it. I said could you please go up to customer service, and they'll take your bill, and also they will help you get your credit card. She said she never received a credit card. She said I was already up there. I said okay, but please, I just don't want to -- I don't think I can take this card. I said I'm really busy and I had no backup to help me do anything. She turned around and she called me this f*****g dyke, and I -- we're called a lot of names in the store by customers, a lot of names. I just couldn't handle this. I was so stressed.

Certified Record (C.R.) Item 10, Notes of Testimony, July 24, 2019 (N.T.) at 11-12.

Claimant continued:

[Claimant] There was no help on the floor, the manager, I don't know where she was, I don't know whether [the other manager] Kirk [Dawson] was down in his own department, because they're not store managers. They are department managers that run the store. So they are in their department as well as running the store. I just froze. I mean, I just froze. I couldn't do anything. I left the floor. When I left the floor and I went upstairs, and I said did anybody come up there and report me? I said, did anybody come up to want to pay a bill, and they said no. I was calm then, I was

[5] Nicole's last name does not appear in the record.

4

overwhelmed, I had customers. I came down the escalator and there was this lady. I went up to her . . .

R[eferee] Which lady?

C[laimant] *The lady that called me the name. I went up to her and I said to her, I said, don't ever you [sic] call anybody a f****** d\*\*\**. I said that is so not right, you can't do those things. Then she proceeded to speak in Spanish, I don't know what she was saying to me, and I was on my way down -- *I said, I'm on my way down to the register, I have to ring up stuff, and I said just go back to Mexico. I did say that*. I was so -- I didn't know how to retaliate. I was upset and I was never called that before in my life. Then she proceeded to say, well, I'm not from Mexico, I'm from Columbia. Well, I -- then I went down there and in the meantime I was crying, waiting on customers, and finally the manager shows up. There was no witness. There was nobody there, no help for five and a half hours. We only get a half an hour lunch and ten-minute break. I was there with nothing. I didn't have any recourse. . . .

N.T. at 12 (emphasis added).

This Court has explained: "[T]he [UCBR] is the ultimate fact-finder in [UC] matters[.] . . . Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal." *Sipps*, 181 A.3d at 484 (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted)). "Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion." *Sipps*, 181 A.3d at 484 (quoting *Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999)).

Here, the UCBR adopted the Referee's findings and conclusion:

In the present case, [] [E]mployer['s] witness did not have any firsthand testimony as to what happened in the final incident, but was able to establish that [] [E]mployer has a [P]olicy that prohibits abusive or threatening language to customers. Here, [] [C]laimant admitted that she did get into a verbal altercation with the customer after the customer made an unprovoked, abhorrent comment to [] [C]laimant. As such, however unfair [] [E]mployer's

[P]olicy may be towards its employees, [] [C]laimant's admission to the verbal altercation with the customer has met [] [E]mployer's burden to show the [P]olicy was violated. Accordingly, the Referee concludes that [] [E]mployer has met its burden of proof in establishing that [] [C]laimant's discharge from employment was for reasons which rise to the level of willful misconduct in connection with the work, and benefits are denied in accordance with Section 402(e) of the Law.

Referee Dec. at 2. The UCBR added: "[A]lthough the customer's comments may have been hurtful and unwarranted, this does not excuse [] [C]laimant's retaliatory statement. Consequently, she failed to prove good cause for her actions."[6] UCBR Dec. at 1.

Based upon this Court's review of the record, there is substantial evidence to support the UCBR's findings and conclusions. Thus, this Court holds that the UCBR properly concluded Claimant violated Employer's Policy without good cause for doing so. Accordingly, the Court discerns no error or abuse of discretion by the UCBR in denying Claimant UC benefits under Section 402(e) of the Law.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[6] This statement is especially true here, where there was time and distance between the customer's comments and Claimant's response thereto.

6

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michele Marie Drayer,              :
           Petitioner         :
                                 :
          v.                  :
                                 :
Unemployment Compensation  :
Board of Review,            :    No. 1212 C.D. 2019
           Respondent     :

## O R D E R

AND NOW, this 7th day of February, 2020, the Unemployment Compensation Board of Review's August 23, 2019 order is affirmed.

_____
ANNE E. COVEY, Judge