IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frances M. Rodriguez,                         :
              Petitioner                   :
                                          :
          v.                                :
                                          :
Unemployment Compensation                     :
Board of Review,                              :  No. 845 C.D. 2019
              Respondent                  :  Submitted: February 21, 2020


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                    FILED: April 17, 2020


          Frances M. Rodriguez (Claimant) petitions this Court pro se for review of the Unemployment Compensation (UC) Board of Review's (UCBR) May 8, 2019 order affirming the Referee's decision denying UC benefits under Section 402(e) of the UC Law (Law).[1]  The sole issue before this Court is whether SupportSoft (Employer) met its burden of proving that Claimant committed willful misconduct. After review, we affirm.

          Employer employed Claimant as a full-time remote services technician from June 18, 2018 to November 14, 2018.  Employer operates a work from home virtual call center.  Employer has a customer interaction policy (Policy) and code of conduct which states that the use of profanity, screaming or other inappropriate tone

---

    [1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to willful misconduct).

leads to immediate employment termination because there is a zero tolerance for such conduct. Claimant was aware or should have been aware of Employer's Policy and code of conduct. Employer provided Claimant with six weeks of training, including training on how to de-escalate from a call where the customer is irate and how and when to contact a supervisor.

On November 13, 2018, Claimant was on a customer call for 45 minutes. During the call, Claimant was rude and did not contact a supervisor. Claimant made sarcastic remarks about the customer's English and grammar, and made derogatory comments about his education based thereon. The customer complained about Claimant's conduct. As a result, Employer conducted an investigation. Employer listened to the call in its entirety. Employer found Claimant's conduct shocking, condescending and disrespectful, and determined that Claimant challenged the customer, corrected his English and pretended to hang up on the customer which led to the customer getting angry. Employer discharged Claimant on November 14, 2018, for her unprofessional behavior.

Claimant applied for UC benefits. On January 29, 2019, the Erie UC Service Center determined that Claimant was eligible for UC benefits under Section 402(e) of the Law. Employer appealed and a Referee hearing was held. On March 27, 2019, the Referee reversed the UC Service Center's determination. Claimant appealed to the UCBR. On May 8, 2019, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[2]

---

[2] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

Initially,

> Section 402(e) of the Law provides that an employee is ineligible for [UC] benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in a[] [UC] case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Sipps v. Unemployment Comp. Bd. of Review*, 181 A.3d 479, 481 (Pa. Cmwlth. 2018) (quoting *Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000) (citation and emphasis omitted)).

Essentially, Claimant argues that this Court should believe her version of the facts, i.e., she did nothing wrong.[3] Employer rejoins that it established Claimant was discharged because she violated the Policy when she was rude and sarcastic to a customer and that Claimant did not prove good cause for her conduct.

This Court has held:

> Where willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and that the employee was aware of the rule. Once employer meets this burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule.

*Sipps*, 181 A.3d at 482 (quoting *Weingard v. Unemployment Comp. Bd. of Review*, 26 A.3d 571, 574-75 (Pa. Cmwlth. 2011) (citation omitted)).

---

[3] Claimant erroneously frames her argument with respect to Section 402(b) of the Law, 43 P.S. § 802(b) (referring to voluntary termination of employment), and asserts that she had a necessitous and compelling reason to act as she did. *See* Claimant Br.

Here, Employer's Human Resources Manager Katherine Parr (Parr) related that in a recorded phone call with a customer, Claimant

> was very offensive to the customer. He was calling in because he had not had the technician out. So, . . . he was already at the point of frustration, and he stated to [Claimant], I have homework that I have to do online tonight. As [Claimant] is going through and checking the notes on the account, she says to him, well, not for nothing, sir, but why would you wait until the last minute to do your schoolwork, and he's just kind of flabbergasted by this and says kind of, thank for you telling me how to run my life, I really just need my Internet fixed. And so, that's an escalation point in the call. What [Claimant] was trained to do was if there was a situation where a customer -- her primary job is to de-escalate the customer, right, and provide a well [sic] customer experience. And, so, her job was to keep the call moving forward, find a solution for the customer, not engage in inflammatory remarks. As we proceed through the call, [Claimant] also talks over the customer. He requests a supervisor. At the 23-minute mark of the call, he requests a supervisor, and [Claimant's] in the middle of creating another work order for another technician to come, and she just keeps talking over him and says, when do you want the work order? And her tone of voice is escalating and higher, almost to a yelling point. And says well, I'll just go ahead and cancel this work order. And he's just like, I just want to speak to a supervisor, you do not have to speak to me anymore. At this point, [Claimant] cancels the work order, and he says, no, I don't want you to cancel the work order, I want to speak to your supervisor, but you don't have to cancel the work order. [Claimant] continues to escalate through her tone of voice, through her actions. She at this point, threatens to disconnect the call.
>
> R[eferee:] Did [Claimant] disconnect the call?
>
> [Parr:] She did not. She did not. [sic] And she told him, she said, it's too late, I've already cancelled the order. So she was trained that if she did have a customer situation, even if the customer were [sic] being disrespectful, she's to follow the escalation procedure. Place the customer on hold, and reach out to a supervisor, and follow the

4

escalation process. [Claimant] did not do that, she continue[d] to talk to the customer, not place him on hold.

Notes of Testimony March 21, 2019 (N.T.) at 11-12. Parr continued:

> The call goes on. About 23 minutes, they again are discussion [sic] – I'm sorry, about 30 minutes, [Claimant] says . . . [speaks] to him in Spanish, then they have a – the customer says, oh, look whose [sic] cursing now. Look whose [sic] cussing now. [Claimant] said I'm not cussing, I'm cursing [sic], the correct word is cussing. She tells the customer that she's correcting his English, and states sarcastically to him, he must be in a real [sic] good university there, meaning since she had to correct his English.
>
> R[eferee:] So she was being sarcastic?
>
> [Parr:] Yeah, she [spoke to] him in Spanish and then was sarcastic and corrected his English and said you must be in a real good university, meaning if I have to correct your English, you must not be in a very good school. A totally inappropriate comment to make.

N.T. at 12.

In her brief, Claimant appears to argue that she had good cause to act as she did because she was written up twice that day when she should not have been disciplined, and therefore "was over[]whelmed." Claimant Br. at 5.[4] Consequently, she argues, she behaved in the same manner as a reasonable person would have acted in her circumstances. Further, Claimant asserts that she "kept apologizing to the caller even though after such a long time to get a supervisor for the caller he was irritated and upset from the first minute of the call [and] my co-worker Jose took over the call 40 minutes later." Claimant Br. at 6.

This Court has explained: "[T]he [UCBR] is the ultimate fact-finder in [UC] matters[.] . . . Where substantial evidence supports the [UCBR's] findings, they

---

[4] The pages of Claimant's brief are not numbered; thus, for ease of reference, the Court numbered the pages beginning with the page after the table of contents.

are conclusive on appeal." *Sipps*, 181 A.3d at 484 (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted)). "Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion." *Sipps*, 181 A.3d at 484 (quoting *Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999)).

> Here, the UCBR determined:
>
> On appeal, [] [C]laimant acknowledged that she had bickered with the customer, but argues that she did not curse and that [E]mployer did not assist her in transferring the caller when he was angry. . . . [T]he [UCBR] credits [] [C]laimant that she did not curse in Spanish. However, [] [C]laimant's conduct was still violative of [] [E]mployer's standards in that she was rude and sarcastic to the customer. Even if [] [E]mployer was unable to accept the call transfer, [] [C]laimant's actions are still not justified under the circumstances.
>
> Therefore, the [UCBR] amends,[5] adopts, and incorporates the Referee's findings and conclusions[.]

UCBR Dec. at 1. The Referee concluded:

> In the present case, [] [C]laimant testified that the customer was rude and talked about her accent. [] [C]laimant's testimony was not credible.
>
> Based on the competent and credible first-hand testimony provided by [] [E]mployer's witnesses, the Referee finds that [] [C]laimant's conduct indicated a disregard of the standards of behavior that an employer has the right to expect of an employee. Here, [] [C]laimant was disrespectful, aggravated the customer, and even cursed in Spanish. As such, the Referee finds that [] [C]laimant's conduct indicated a disregard of her duties to [] [E]mployer, and rose to the level of willful misconduct as contemplated under Section 402(e) of the Law. Therefore, the Referee finds that [] [C]laimant is ineligible for benefits under Section 402(e) of the Law.

---

[5] The Referee had found as a fact that Claimant cursed at the customer. Hence, the UCBR amended that finding.

6

Referee Dec. at 3.

Based upon this Court's review of the record, there is substantial evidence to support the UCBR's findings and conclusions. Thus, this Court holds that the UCBR properly concluded Claimant committed willful misconduct without good cause for doing so. Accordingly, the Court discerns no error or abuse of discretion by the UCBR in denying Claimant UC benefits under Section 402(e) of the Law.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frances M. Rodriguez,                        :
               Petitioner        :
                                 :
           v.                           :
                                 :
Unemployment Compensation                    :
Board of Review,                             :   No. 845 C.D. 2019
               Respondent        :

## O R D E R

AND NOW, this 17th day of April, 2020, the Unemployment Compensation Board of Review's May 8, 2019 order is affirmed.

_____
ANNE E. COVEY, Judge