IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edgar D. Montijo,                    :
           Petitioner         :
                          :
       v.                 :
                          :
Unemployment Compensation Board  :
of Review,                   :   No. 389 C.D. 2020
           Respondent     :   Submitted: February 19, 2021

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: April 21, 2021

       Edgar D. Montijo (Claimant) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) January 24, 2020 order affirming the Referee's decision denying him UC benefits under Section 402(e) of the UC Law (Law).[1] The sole issue before this Court is whether the UCBR erred by concluding that Fuling Plastic USA, Inc. (Employer) met its burden of proving that Claimant committed willful misconduct.[2] After review, this Court affirms.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to willful misconduct).

[2] Claimant presents three issues in his Statement of Questions Involved: (1) whether the Referee and the UCBR erred by concluding that Claimant's alleged actions constituted willful misconduct; (2) whether the Referee and the UCBR's findings were supported by substantial evidence; and (3) whether the Referee and the UCBR failed to consider Claimant's just cause for his actions. *See* Claimant Br. at 3. Because these issues are subsumed in this Court's analysis of whether the UCBR erred by concluding that Employer met its burden of proving that Claimant committed willful misconduct, they have been combined and will be addressed accordingly herein.

Claimant worked from April 16, 2015 to October 9, 2019, as a forklift operator for Employer.[3] Employer's August 2019 Employee Handbook (Handbook) specified that an employee's "[r]efusal or failure to follow safety rules and procedures" is misconduct that could result in immediate employment termination. *See* Certified Record (C.R.) at 105-106. The Handbook included Employer's safety rules. Claimant received the Handbook. *See* C.R. Item 10, December 5, 2019 Notes of Testimony (N.T.) at 7, 18.

On September 30, 2019, while Employer's Human Resources Manager Monica Cajamarca (Cajamarca), Marketing Manager Jeannine Gallagher (Gallagher), and technician Christian Debarro (Debarro) were walking in the warehouse, Claimant exited a trailer driving a forklift and nearly struck Debarro. Cajamarca and Gallagher met with Claimant to discuss the September 30, 2019 incident and, on October 3, 2019, suspended Claimant pending further investigation. On October 9, 2019, Employer discharged Claimant for violating its safety rules.

Claimant applied for UC benefits. On November 1, 2019, the Altoona UC Service Center determined that Claimant was ineligible for UC benefits pursuant to Section 402(e) of the Law. Claimant appealed and a Referee held a hearing on December 5, 2019. On December 6, 2019, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR. On January 24, 2020, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[4]

---

[3] Claimant was also Employer's Warehouse Lead and forklift trainer.

[4] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

Initially,

> Section 402(e) of the Law provides that an employee is ineligible for [UC] benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in a[] [UC] case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 481 (Pa. Cmwlth. 2018) (emphasis omitted) (quoting *Dep't of Transp. v. Unemployment Comp. Bd. of Rev.*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000) (citation omitted)).

> Where willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and that the employee was aware of the rule. Once employer meets this burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule.

*Sipps*, 181 A.3d at 482 (quoting *Weingard v. Unemployment Comp. Bd. of Rev.*, 26 A.3d 571, 574-75 (Pa. Cmwlth. 2011) (citation omitted)). "A claimant has good cause if . . . h[is] actions are justifiable and reasonable under the circumstances." *Grand Sport Auto Body v. Unemployment Comp. Bd. of Rev.*, 55 A.3d 186, 190 (Pa. Cmwlth. 2012) (citation omitted) (quoting *Docherty v. Unemployment Comp. Bd. of Rev.*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006)). Ultimately, "[t]he question of whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Scott v. Unemployment Comp. Bd. of Rev.*, 105 A.3d 839, 844 (Pa. Cmwlth. 2014).

3

Claimant argues that the UCBR erred by concluding that Employer met its burden of proving that Claimant committed willful misconduct. Essentially, Claimant argues that this Court should believe his version of the facts, i.e., that he did nothing wrong. Employer rejoins that it established Claimant was discharged because he violated Employer's safety rules while operating a forklift on September 30, 2019, and he failed to demonstrate good cause for his conduct.

At the Referee hearing, Cajamarca testified that, since April 2019, she and Gallagher had been working toward making Employer's warehouse a safer environment after the former Logistics Manager was fired. To that end, they conducted weekly safety meetings and updated Employer's Handbook in August 2019, which Claimant received.

Cajamarca explained that, on September 30, 2019, as she, Gallagher and Debarro were walking through the warehouse, Claimant "back[ed] out of the trailer on a forklift at a high speed without beeping his horn to back up and almost hit Debarro[.]" N.T. at 7. Cajamarca estimated that Claimant's speed was approximately 50% to 75% faster than normal, and if they had not moved out of the way, Claimant probably would have struck them. *See* N.T. at 8-11. She described that Claimant got so close to Debarro, Debarro was able to touch the forklift with a paper in his hand. *See* N.T. at 8-9; *see also* C.R. at 82.

Cajamarca recalled that, when she and Gallagher met with Claimant to discuss the incident, Claimant denied violating Employer's safety procedures and further responded that he did not think anyone else was in the warehouse,[5] and that no one got hurt. *See* N.T. at 10-11. Cajamarca declared that Claimant was not permitted to disregard Employer's safety policies simply because he believed that

---

[5] When the incident occurred, Employer was conducting a meeting at another warehouse, which most employees were attending. However, in addition to Claimant, a second forklift driver and Employer's shipping and receiving clerk remained on the premises. *See* N.T. at 10. Cajamarca and Gallagher were returning from that meeting when this incident occurred.

4

no one was in the warehouse. *See* N.T. at 10. Cajamarca stated that Claimant's employment was terminated for violating Employer's forklift driver procedures due to his excessive speed, and his failure to beep his horn and look back while exiting the trailer on September 30, 2019.[6] *See* N.T. at 10; *see also* C.R. at 25.

Gallagher confirmed Cajamarca's description of the steps they were taking to make Employer's warehouse safer, including conducting weekly safety meetings. Gallagher testified regarding the September 30, 2019 incident, that Claimant exited the trailer in reverse at a faster rate of speed than she had observed other employees do in similar circumstances. *See* N.T. at 12. Gallagher further declared that Claimant did not beep his horn or look behind him, as Employer's safety guidelines require. *See* N.T. at 13. She recalled that Claimant abruptly stopped the forklift when Debarro yelled; otherwise, Claimant would have struck Debarro. *See* N.T. at 13-14. Gallagher also described Claimant denying that he was speeding, declaring that no one was supposed to be in the warehouse, and justifying that no one got hurt. *See* N.T. at 14-15. She stated that Claimant's responses did not reflect an understanding that he had made poor decisions that day. *See* N.T. at 15.

Employer also presented the Handbook, which declared, in pertinent part:

> By deciding to work here, you agree to follow our rules:
>
> While it is impossible to list everything that could be considered misconduct in the workplace, what is outlined here is a list of common-sense infractions that could result in discipline, up to and including immediate termination of employment. . . .

---

[6] The record contains a narrative regarding another Claimant safety violation on October 1, 2019; however, Employer did not present evidence of that incident at the Referee hearing. *See* C.R. at 20.

5

. . . .

- Refusal or failure to follow safety rules and procedures.

C.R. at 105-106. In the Safety and Loss Prevention portion of the Handbook, Employer expressly prohibited employees from "[t]aking any action to place a person in reasonable fear of imminent harm or offensive contact." C.R. at 125. In the Safety Guidelines to Prevent Accidents portion of the Handbook, Employer specified the following rules, *inter alia*, relative to use of company vehicles: "Do Not Drive too fast for conditions," "Do Not Fail to reduce speed," "Do Not Fail to yield," "Do Not Back up improperly[.]" *See* C.R. at 129.

> Claimant acknowledged that he received the Handbook and testified:
>
> I was coming out of the trailer. Yes, I was looking back. I did honk the horn, but apparently they didn't hear. . . . [W]hen I came out of the trailer, I turned to the left . . . . I always turn close to the back doors because I'm going to turn and then go into the staging area to grab a pallet. When I made the turn, I saw [Debarro]. I pressed the brakes and stopped the lift right away.

N.T. at 17; *see also* N.T. at 18. Claimant added:

> [No] one's supposed to be near that dock or they're supposed to walk alongside the staging area in a line, not side-by-side, not - they're supposed to walk that way, if we're going to go by [s]afety [r]ules, number one. Number two, forklifts that were purchased and brought into this company were -- we weren't allowed to use until Eastern Lift came in and preset the speeds on -- and all the settings on it. . . . Because once that setting is set, you can mash the pedal down, the lift is only going to go as fast as you're allowing me to go in the warehouse [(approximately 10 miles per hour without a load)]. So you cannot tell me that I was in excess -- if you're limiting my excess of speed. Saying that I went 50 or 75 [%] faster than the lift's supposed to, it's not possible because [Employer is] governing the speed.

6

N.T. at 17; *see also* N.T. at 18-19. In addition, Claimant declared that Employer had not consistently enforced its safety rules.

Based upon the evidence, the Referee denied Claimant UC benefits pursuant to Section 402(e) of the Law, stating that Employer established that it had reasonable safety rules in place of which Claimant was aware and, based upon Employer's witnesses' credible testimony, Claimant's conduct on September 30, 2019, violated those safety rules. *See* Referee Dec. at 4; C.R. at 140. The Referee further declared that, although Claimant testified that Employer did not consistently enforce its safety rules, his mere allegation was insufficient to meet his burden of establishing good cause for violating them. *See* Referee Dec. at 2-3; C.R. at 138-139.

This Court has explained: "[T]he [UCBR] is the ultimate fact-finder in [UC] matters . . . . Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal." *Sipps*, 181 A.3d at 484 (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted)). "Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion." *Sipps*, 181 A.3d at 484 (quoting *Sanders v. Unemployment Comp. Bd. of Rev.*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999)).

Here, the UCBR made the following findings:

1. [Employer] employed [Claimant] through October 9, 2019, [] as a forklift operator.

2. [Claimant] knew that [Employer's] policy considered a safety violation to be a potentially terminable offense.

3. [Claimant] knew that [Employer's] safety procedures required him to use his horn when operating a forklift in reverse.

4. On September 30, 2019, [Claimant] backed his forklift out of a trailer at [an] excessive speed without using his

7

horn and stopped abruptly before nearly striking a co[-]worker.

5. On October 9, 2019, [Employer] discharged [Claimant] for violating its safety policies on September 30, 2019.

C.R. Item 15, UCBR Op. at 1; C.R. at 193. The UCBR affirmed the Referee's decision, stating:

> Through credible testimony and documentary evidence, [Employer] established that [Claimant] knew its safety policy required him to use his horn when operating a forklift in reverse, [a] violation of which was a potentially terminable offense.
>
> [Employer] presented credible testimony that [Claimant] did not use his horn when operating his forklift in reverse on September 30, 2019. Additionally, [Claimant] operated his forklift at [an] excessive speed and came dangerously close to striking a co[-]worker. Even absent a policy, such speed and proximity to an individual evidence[s] [Claimant's] reckless disregard of [Employer's] interests. Whether [Claimant] expected others to be present or co[-]workers were oriented differently than expected does not change that [Claimant] violated a known policy. [Claimant] has not credibly justified his conduct.

UCBR Op. at 2; C.R. at 194.

Based upon this Court's review of the record, there was substantial evidence to support the UCBR's findings and conclusions. Thus, this Court holds that the UCBR properly concluded Claimant committed willful misconduct without good cause for doing so. Accordingly, this Court discerns no error or abuse of discretion by the UCBR in denying Claimant UC benefits under Section 402(e) of the Law.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

8

### IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edgar D. Montijo,                                          :
                     Petitioner                           :
                                                          :
            v.                                            :
                                                          :
Unemployment Compensation Board                           :
of Review,                                                :          No. 389 C.D. 2020
                     Respondent                           :

### O R D E R

AND NOW, this 21st day of April, 2021, the Unemployment Compensation Board of Review's January 24, 2020 order is affirmed.

_____
ANNE E. COVEY, Judge