# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marysol Reices,                            :
                          Petitioner        :
                                            :
            v.                              :  No. 762 C.D. 2020
                                            :  Argued:  April 12, 2021
Unemployment Compensation Board             :
of Review,                                  :
                          Respondent        :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
           HONORABLE ANNE E. COVEY, Judge

**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED:  May 14, 2021**

Marysol Reices (Claimant) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) dated July 10, 2020, which affirmed a Referee's Decision finding Claimant ineligible to receive UC benefits pursuant to Section 402(e) of the UC Law (Law).[1]  On appeal, Claimant argues:  (1) the Board capriciously disregarded evidence that Accessing Independence (Employer) terminated Claimant because her felony conviction required Employer to do so based on the Older Adults Protective Services Act

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (setting forth that a claimant is ineligible to receive UC benefits when that claimant's "unemployment is due to [] discharge or temporary suspension from work for willful misconduct connected with [the claimant's] work . . .").

(OAPSA);[2] (2) Claimant's failure to immediately report her felony arrest to Employer in violation of Employer's policy does not constitute willful misconduct because Claimant did not deliberately violate Employer's policy; (3) the remoteness doctrine bars an ineligibility determination in this case; and (4) Employer acted unreasonably by not exercising discretion and imposing discipline other than discharge against Claimant. Because substantial, competent evidence supported the Board's finding that Employer terminated Claimant since she failed to report her felony arrest immediately and thus violated Employer's policy, the Board did not capriciously disregard evidence about whether Employer terminated Claimant because of OAPSA. Moreover, the evidence of record does not support Claimant's contention that she did not immediately report her arrest due to mental illness and, therefore, did not deliberately violate Employer's policy. Also, we cannot say that, after learning that Claimant had been arrested, Employer substantially delayed terminating her such that the remoteness doctrine applies. Last, Employer was under no obligation to impose discipline less severe than discharge. Accordingly, we affirm the Board's Order.

I.      **Factual Background and Procedure**

Claimant worked as a full-time direct care worker for Employer from October 2017 until she was discharged from that position on February 17, 2020. Thereafter, Claimant filed for UC benefits. UC authorities requested information from both Claimant and Employer regarding Claimant's discharge. Based upon this information, the Department of Labor and Industry's Office of UC Benefits issued a Notice of Determination finding Claimant ineligible to receive UC benefits pursuant to Section 402(e) of the Law because Claimant was discharged for willful

---

[2] Act of November 6, 1987, P.L. 381, *as amended*, 35 P.S. §§ 10225.101-10225.5102.

2

misconduct. (Certified Record (C.R.) at 49.) Specifically, the Office of UC Benefits found that Employer discharged Claimant for violating Employer's rule requiring "all employees to report any arrest and[/]or convictions to human resources immediately after they occur," and "Claimant [did] not show[] good cause for violating the rule." (*Id.*) Claimant timely appealed the Notice of Determination.

Claimant's appeal was assigned to a Referee, who conducted a telephone hearing on May 8, 2020. Claimant and one witness for Employer testified at the hearing. Claimant testified, in relevant part, as follows. She had read Employer's Disciplinary Action Policy in 2017, had been arrested in 2018, and had not reported that arrest to Employer until January 2020. (C.R. Item 10, Hearing (Hr'g) Transcript (Tr.) at 23.) She did not report her arrest to Employer because she "was under a deal of stress . . . [and] forgot to tell [Employer]." (*Id.* at 18.) On January 20, 2020, Claimant received an email from a work colleague indicating that Employer had scheduled her for an "FBI fingerprint." (*Id.* at 19.) After receiving that email, Claimant arranged to meet with her supervisor and, at that meeting, she provided him with a letter from her probation officer. That letter indicated that, as of January 24, 2020, Claimant was in the Mental Health Court Diversionary Program of Lancaster County and, after completion of the program, she would have "her Felony 3 Retail Theft charge dismissed and erased from her criminal record." (C.R. at 152.) Upon reviewing the letter, Claimant's supervisor thanked Claimant for "coming forward and being honest" and asked her not to worry as "[e]verything [would] be okay." (Hr'g Tr. at 21.) Employer subsequently asked Claimant to attend a February 17, 2020 meeting, at which Employer's Human Resources (HR) Coordinator (HR Coordinator) told Claimant that "because of . . . [Claimant's] felony [she] [could

3

not] work for[ Employer] any longer." (*Id*. at 22.) According to Claimant, she was terminated based on the OAPSA. (*Id*. at 12.)

On direct examination, HR Coordinator testified, in relevant part, as follows. Claimant was discharged because "she was[ not] hirable anymore with [Employer] based upon her recent conviction. [Employer] used the [OAPSA] as [] guidance for [its] hiring practices . . . ." (*Id*. at 12.) Claimant was terminated because she violated Rule 22[3] of Employer's Corrective Action, Discipline and Documentation policy (Discipline Policy) by failing to "report her arrest to [Employer.]" (*Id*.) Around the time that Claimant submitted to an FBI background check for purposes of a work assignment, Claimant provided Employer with a letter from the Court of Common Pleas of Lancaster County indicating that she had been arrested on March 13, 2018. Claimant was aware of Rule 22 because it was in Employer's Employee Handbook (Handbook), and Claimant acknowledged when she was hired that she was familiar with the Handbook. Rule 22 provides that failure to report an arrest can result in termination. Upon receiving information from an employee about an arrest, Employer considers the overall circumstances. In this instance, because Claimant was arrested on a felony charge, Employer "[could not] utilize employment at th[e] time because it [was] [] against [] [Employer's] hiring standards" as "outlined [in] the [OAPSA]." (*Id*. at 13.) At Claimant's termination meeting, HR Coordinator explained to Claimant how her "Employee Counseling Discipline Notice" and "FBI form" "fell within the [OAPSA]" and invited Claimant to apply "for reemployment because [Claimant's] hiring standards at that time would have changed." (*Id*. at 15.)

On cross-examination, HR Coordinator testified that Employer has a progressive employee discipline policy, but if an infraction is severe, "[Employer]

---

[3] Employer's Policy Number 2.08.22 requires an employee to immediately report an arrest or conviction. Because Claimant refers to that policy as "Rule 22," we will do the same.

can jump through the different realms of corrective discipline." (*Id.* at 16.) Employer did not provide Claimant with a formal warning prior to terminating her. HR Coordinator confirmed her earlier testimony that Employer could not continue to employ Claimant given its policy that Claimant's "retail theft charge was a prohibited offense under the [OAPSA]." (*Id.* at 18.)

Following the hearing, the Referee issued a decision finding Claimant ineligible to receive UC benefits pursuant to Section 402(e) of the Law because Claimant was discharged for willful misconduct.[4] The Referee found that

> Employer's [Discipline Policy] . . . requires all employe[es] to report any arrest(s) and/or convictions to [HR] immediately after they occur. If an employee is arrested but does not report it to [HR], it would violate this policy and would be grounds for suspension and/or disciplinary action up to and including termination.

(Referee's Decision, Finding of Fact ¶ 2 (emphasis omitted).) Claimant acknowledged receipt of and received training regarding the Discipline Policy during her orientation. (*Id.* ¶ 3.) Furthermore, the Referee found that, on March 18, 2018, Claimant was arrested and charged with a felony of the third degree for retail theft, and she reported the arrest to her supervisor on January 28, 2020. (*Id.* ¶¶ 4, 5.) On February 17, 2020, Employer terminated Claimant "for failing to report her felony arrest immediately." (*Id.* ¶ 6.)

The Referee determined that Employer had a reasonable policy requiring employees to immediately report being arrested, and "Claimant failed to report her felony arrest for approximately 21 months." (Referee's Decision at 3.) In addition, the Referee did not find credible Claimant's assertion that she was stressed and

---

[4] The Referee also concluded that Claimant timely appealed her Notice of Determination. Employer did not appeal that determination to the Board. Therefore, that issue is not currently before us.

5

forgot to immediately report her arrest. Instead, the Referee found that Claimant "only reported [her arrest] when [] an FBI criminal background check was forthcoming which would be disclosed to [] Employer." (*Id.*) Moreover, the Referee concluded that Employer need not have warned Claimant before terminating her because Rule 22 "provides for up to immediate termination. The Referee did not consider the [c]onstitutionality of [the OAPSA], as the failure to report the arrest violated the specific arrest reporting policy." (*Id.*) Claimant appealed the Referee's Decision to the Board.

In a decision dated July 10, 2020, the Board adopted and incorporated the Referee's findings and conclusions and affirmed the Referee's Decision denying benefits pursuant to Section 402(e) of the Law. Claimant then filed the instant petition for review with this Court.[5]

## II. Discussion

Before analyzing the parties' specific arguments, we recount the law on willful misconduct. Section 402(e) of the Law sets forth that a claimant is ineligible to receive UC benefits when that claimant's "unemployment is due to [] discharge or temporary suspension from work for willful misconduct connected with [the claimant's] work." 43 P.S. § 802(e). "Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court." *Gordon Terminal Serv. Co. v. Unemployment Comp. Bd. of Rev.*, 211 A.3d 893, 898 (Pa. Cmwlth. 2019) (quoting *Nolan v. Unemployment Comp. Bd. of Rev.*, 425 A.2d 1203,

---

[5] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

6

1205 (Pa. Cmwlth. 1981)). In UC cases, the employer bears the burden of demonstrating that the claimant's unemployment is due to willful misconduct. *Walsh v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 363, 368 (Pa. Cmwlth. 2008). The Law does not define the term "willful misconduct." However, our Supreme Court defined that term in *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997), as "a) wanton or willful disregard for an employer's interests; b) deliberate violation of an employer's rules; c) disregard for standards of behavior which an employer can rightfully expect of an employee; or d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations."

A. Capricious Disregard and Substantial Evidence

On appeal, Claimant argues that the Board "capriciously disregarded [] Employer's clear, specific testimony that [] Claimant was discharged because her conviction was a listed offense in OAPSA and not because [] her failure to immediately report her arrest [was] a violation of Rule 22." (Claimant's Brief (Br.) at 13.) Claimant cites several statements made by HR Coordinator indicating that Employer relied on the OAPSA when it decided to discharge Claimant. (*Id*.) According to Claimant, this testimony shows that she was actually discharged because Employer concluded that, under the OAPSA, termination was required given Claimant's felony conviction.[6] Consequently, Claimant submits that the

---

[6] Under Claimant's theory that she was actually discharged because of Employer's improper application of the OAPSA, she argues she did not commit willful misconduct because her "felony conviction is not work-related and is therefore not connected to her employment." (Claimant's Br. at 25.) In addition, Claimant maintains that Employer misapplied the law by "basing [Claimant's] discharge upon [the OAPSA's] irrebuttable presumption" that Claimant was unfit to continue in her position because of her felony conviction, as that provision of the OAPSA was declared unconstitutional in *Peake v. Commonwealth*, 132 A.3d 506 (Pa. Cmwlth. 2015). (*Id*.

7

Board's finding that Claimant was discharged because she violated Rule 22 is not based on substantial evidence, as that was not the actual cause of her termination. (*Id*. at 23.)

The Board responds that Employer established that it discharged Claimant because she violated Rule 22 by failing to report her arrest and, therefore, "the Board was not required to address Employer's testimony that it also could not continue to employ her due to the subsequent felony conviction." (Board's Br. at 12.) According to the Board, a claimant, like Claimant in this case, "who has been discharged for multiple reasons is disqualified from receiving benefits even if only one of those reasons amounts to willful misconduct." (*Id*. (quoting *Glenn v. Unemployment Comp. Bd. of Rev.*, 928 A.2d 1169, 1172 (Pa. Cmwlth. 2007).) The Board argues that, while Claimant challenges the Board's finding "that she was actually terminated for violation of the [OAPSA]," the "record is replete with substantial, competent evidence to support the Board's [f]inding that Claimant was terminated for failing to immediately report an arrest, in violation of Employer's policy." (*Id*. at 7-8.) That evidence includes the testimony of HR Coordinator that Employer discharged Claimant for violating Rule 22. (*Id*.) In addition, the Board points to the termination notice that Employer provided to Claimant, which states, *inter alia*, that "[Claimant] did not initially report [her] arrest when it occurred until [she] [was] required to do an FBI background check" and Employer terminated Claimant "for violating [Rule 22] as noted [earlier in the termination notice]." (*Id*. at 8-9 (quoting Employee Counseling & Discipline Notice, C.R. at 134).) Moreover, the Board identifies several of Employer's responses in a pre-hearing questionnaire,

---

at 26.) Claimant submits that denying her UC benefits based on Employer's misapplication of the OAPSA is "unconstitutional and against public policy" because it "amounts to the State partaking in the unequal protection of the law." (*Id*. at 27.)

the UI State Inquiry, which indicate that Claimant was terminated because she violated Rule 22. (*Id*. at 10 (citing UI State Inquiry form, C.R. at 37).) According to the Board, because "substantial[,] competent evidence support[ed] the Board's finding" that Claimant was discharged for violating Rule 22, "that finding is binding on appeal." (*Id*. at 11.)

In reply, Claimant relies on *Bertram v. Unemployment Compensation Board of Review*, 206 A.3d 79 (Pa. Cmwlth. 2019), a case in which this Court held that the Board capriciously disregarded relevant evidence, arguing that the "Board has repeated the errors from *Bertram* in the instant case." (Claimant's Reply Br. at 3-4.) Claimant maintains that the Referee "did not attempt to resolve the conflict in evidence to determine whether . . . there was a singular 'actual' cause of termination." (*Id*. at 4.) Claimant submits that, as in *Bertram*, "the Board . . . had an obligation to properly adduce the evidence to reach the question of 'actual' causation and [] did not do so[,]" and thus the "Board's decision should be overturned[,] and [] [Claimant] should be deemed eligible for benefits." (*Id*.)

> A capricious disregard of evidence
>
> occurs where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result. More specifically, a capricious disregard of evidence occurs where the fact[]finder has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment. It is the responsibility of the fact[]finder to resolve the conflicts in the testimony and explain why it has accepted, or rejected, each piece of relevant evidence.

*Bertram*, 206 A.3d at 83 (quotation marks and citations omitted). However, "[t]he express consideration and rejection of [] evidence, by its definition, is not capricious disregard." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 816 (Pa.

Cmwlth. 2005). When examining whether a fact finder capriciously disregarded evidence, we "may not reweigh the evidence or make credibility determinations." *Wise v. Unemployment Comp. Bd. of Rev.*, 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015).

Instantly, Claimant argues that, while the Board found that Employer terminated Claimant because she violated Rule 22, it only reached that result because it capriciously disregarded evidence that Employer terminated Claimant because it concluded, based upon Claimant's felony conviction that, pursuant to the OAPSA, it could not continue employing Claimant. However, in making the findings that it did, the Board need not have "willfully and deliberately disregard[ed] competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Bertram*, 206 A.3d at 83. The evidence of record is clear that Employer terminated Claimant for two reasons. First, because she violated Rule 22, and second, because Claimant's felony conviction was a listed offense in the OAPSA. Pursuant to *Glenn*, "a claimant who has been discharged for multiple reasons is disqualified from receiving benefits even if only one of those reasons amounts to willful misconduct." 928 A.2d at 1172.

In order to reach the result that Employer terminated Claimant for violating Rule 22, the Board need not have considered any of the evidence regarding how Employer utilized the OAPSA in its consideration of Claimant's felony conviction, as that evidence was irrelevant to the completely separate issue of whether Claimant violated Employer's Disciplinary Policy. "It is not capricious to disregard irrelevant evidence." *Jarensky-Moranski v. Workers' Comp. Appeal Bd. (Luzerne Intermediate Unit 18)* (Pa. Cmwlth., No. 2248 C.D. 2008, filed Apr. 30, 2009), slip

op. at 6.[7] Once the Board determined that the record evidence supported the finding that Claimant's actions violated Rule 22, it was not necessary for it to consider evidence regarding Employer's application of the OAPSA to Claimant's felony conviction. *See Saunders v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1045 C.D. 2015, filed Feb. 24, 2016), slip op. at 5 (where there were numerous reasons for claimant's discharge, there was no error in the Board's decision not to consider "the non-immediate reasons offered by [the e]mployer to support [the c]laimant's discharge where those relied upon support[ed] the determination that [the c]laimant was ineligible for UC benefits"). Therefore, we agree that the Board "did not capriciously disregard Employer's testimony regarding [Claimant's] felony conviction" as "it was irrelevant." (Board's Br. at 4.)[8]

We do not accept as persuasive Claimant's argument that *Bertram* is factually analogous to this case such that we should hold, as this Court did in *Bertram*, that the Board capriciously disregarded competent and relevant evidence. In *Bertram*, the referee found that the claimant was dismissed because he called his sales manager a "liar" at a meeting on January 23, 2017. *Bertram*, 206 A.3d at 82. On appeal, the claimant argued that the Board improperly ignored the testimony of his co-worker, who testified that the claimant's sales manager announced claimant's discharge on January 20, 2017. *Id.* at 83. This Court stated that the "[r]eferee's factual findings are based upon [the claimant's sales manager's] testimony, but this testimony was contradicted by other testimony and by documentary evidence[,]"

---

[7] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court, while not binding, may be cited for its persuasive value.

[8] While the Referee did not discuss at length the evidence that Employer terminated Claimant based on the OAPSA, he did not disregard it. The Referee stated that he "did not consider the [c]onstitutionality of [the OAPSA], as the failure to report the arrest violated [Rule 22]." (Referee's Decision at 3.)

including, *inter alia*, the testimony of the claimant's co-worker that the claimant's sales manager announced the claimant's termination three days before the claimant called his sales manager a "liar." *Id*. at 83-84. This Court held that there was a capricious disregard of evidence because the referee did not resolve conflicts between testimony and made no comment on documentary evidence that conflicted with the testimonial evidence upon which the referee had based his findings. *Id*. at 85.

*Bertram* is distinguishable from this case, because unlike here, the Board in that case ignored conflicting evidence as to why the claimant was discharged. There was significant testimonial and documentary evidence in *Bertram* indicating that the claimant was discharged on January 20, 2017, for unsatisfactory work performance. If that evidence was true, then the claimant was not discharged, as the Board found, for calling his sales manager a "liar" three days later. The claimant was discharged for one reason or the other – he could not have been both discharged on January 20, 2017, for unsatisfactory work performance and discharged on January 23, 2017, for calling his sales manager a "liar." Here, in contrast, by finding that Claimant was terminated for violating Rule 22, the Board did not ignore conflicting evidence. The evidence that Employer terminated Claimant based on its application of the OAPSA does not conflict with the evidence that Employer terminated Claimant for violating Rule 22. Both can be true simultaneously, *i.e.*, that the Board found Employer terminated Claimant for failing to immediately report her arrest does not mean that Employer could not also have considered its disciplinary guidelines based on the OAPSA. Whereas in *Bertram* there was evidence suggesting that the employer's reason for discharging the claimant was pretextual, here there is simply no evidence

12

of record suggesting that Employer's discharge of Claimant for violating Rule 22 was pretextual. Accordingly, *Bertram* does not control our decision.

Claimant does not challenge the evidence regarding the Board's finding that Employer discharged Claimant for violating Rule 22, but rather argues that substantial evidence is lacking because Employer's misapplication of the OAPSA was the actual reason Employer terminated Claimant. The Board contends that substantial evidence – documentary and testimonial – underlie the Board's finding that Claimant was discharged for violating Rule 22.

In UC cases, the Board's findings of fact must be supported by "[s]ubstantial evidence[, which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Comp. Bd. of Rev.*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Id.* This Court is bound "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony" to determine if substantial evidence exists for the Board's findings. *U.S. Banknote Co. v. Unemployment Comp. Bd. of Rev.*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (quoting *Taylor v. Unemployment Comp. Bd. of Rev.*, 378 A.2d 829, 831 (Pa. 1977)). Moreover, "even if there is contrary evidence of record, the Board's findings of fact are binding upon the Court where supported by substantial evidence." *Borough of Coaldale v. Unemployment Comp. Bd. of Rev.*, 745 A.2d 728, 731 (Pa. Cmwlth. 2000).

We agree with the Board that substantial evidence supported the Board's finding that Claimant was terminated because she violated Rule 22. In response to the question of whether, in addition to Employer's use of the OAPSA "as a guidance" to terminate Claimant based on her felony conviction, there were other reasons Claimant was terminated, HR Coordinator answered that "[a]ccording to our [Discipline Policy] [] [Claimant] did not report her arrest to [Employer], which occurred on 3/13/18. So, she did not report that she was arrested of a crime to begin with." (Hr'g Tr. at 12.) Also, the termination notice that Claimant received from Employer states, in no uncertain terms, that Claimant was terminated for violating Rule 22. The termination notice provides in the section titled "Description or Reason for Action":

> According to the FBI, on 3/13/2018, you were arrested for retail theft []. To date, you have failed to report this arrest and subsequent charge to your supervisor and/or [HR] []. In accordance with [Rule 22] . . . [i]f an employee is arrested, but does not report it to [HR] [], it would violate [Rule 22] and would be grounds for suspension and/or disciplinary action up to and including termination . . . . You did not initially report your arrest when it occurred until you were required to do an FBI background check.

(C.R. at 134.) In addition, the section of the termination notice titled "Action Plan/Consequences" provides that Claimant was terminated "for violating [Rule 22] as noted [earlier in the termination notice]." (*Id.*) Moreover, Employer's responses in a pre-hearing questionnaire – UI State Inquiry – support the Board's finding that Claimant was discharged for violating Rule 22. Those responses include:

> 5. [D]id the violation of the rule require a discharge or suspension[?]
>
> [Employer's] policy requires all employees to report any arrest(s) and/or convictions to [HR] immediately after they occur. If an employee is arrested, but does not report it to HR, it would violate this

14

policy and would be grounds for suspension and/or disciplin[e] up to termination.

6. [D]id [] [Claimant] provide a reason for violating the rule[?]

[N]o reason was provided. [] [Claimant] did not report her conviction until [Employer] requested an FBI background check . . . .

7. [W]hat was [] [C]laimant's reason for violating the rule[?]

[Claimant] did not disclose that she had [] felony charges while [] employed [by Employer], until she was asked to have an additional clearance[,] . . . [at which time] she then stated the charges would show up.

(C.R. at 37.) A reasonable mind would accept this evidence, in its entirety, as adequate to support the conclusion that Employer terminated Claimant for violating Rule 22. This finding is thus binding on this Court even though there is additional evidence in the record suggesting that Employer discharged Claimant based on its application of the OAPSA. *See Borough of Coaldale*, 745 A.2d at 731. Having determined that substantial evidence supports the Board's finding that Claimant was terminated for violating Rule 22 and the Board did not capriciously disregard evidence that Claimant was terminated for a different reason, we need not reach Claimant's arguments, (Claimant's Br. at 25-27), that are premised on our accepting Claimant's assertion that she was actually discharged based on Employer's improper application of the OAPSA.

## B. Deliberate Violation of Rule 22

Claimant contends that, assuming, *arguendo*, that she was discharged for violating Rule 22, her failure to immediately report her arrest to Employer does not constitute willful misconduct. Specifically, Claimant maintains that she did not intentionally or deliberately violate Rule 22 "because she forgot to report [her arrest]

15

because of her mental illness." (Claimant's Br. at 30.) Claimant points to a letter provided by her criminal defense counsel stating that shortly after her arrest, it was "obvious" that Claimant had mental health issues. (*Id*. (quoting C.R. at 129).) Moreover, Claimant explains that, after her felony conviction, she participated in the Mental Health Court Diversionary Program of Lancaster County, which is a "specialty court program for offenders diagnosed with a serious mental illness." (*Id*. (internal quotations omitted).) According to Claimant, in order to be eligible for that program, a defendant's mental illness must have led to their criminal infraction and the defendant must have a recent diagnosis of mental illness. Thus, Claimant submits that the record evidence shows that her serious mental illness caused her to forget to disclose her arrest to Employer and, therefore, Claimant did not "intentionally or deliberately fail to comply with [Rule 22]." (*Id*. at 31.)

The Board responds that Claimant's position "lacks merit" because the record does not contain evidence establishing "a causal connection between any mental illness Claimant suffered from and her continued violation of [Rule 22]." (Board's Br. at 18.) The Board argues that, in order to accept Claimant's position, "testimony by a person possessing sufficient skill, knowledge or experience in the field of mental disorders . . . is necessary" because here it is less than obvious that Claimant did not disclose her arrest to Employer for 21 months due to a mental illness. (*Id*. at 18-19 (quoting *Brady v. Unemployment Comp. Bd. of Rev.*, 539 A.2d 936, 939 (Pa. Cmwlth. 1988).)) And, because Claimant's proof does not include such testimony, it is insufficient. Specifically, the Board argues

> (1) there is no evidence in the record of **what** mental illness Claimant has, what its symptoms are, and which symptoms Claimant personally suffered from, and (2) there is no evidence in the record authored by a professional in mental illnesses who can opine on the causality between Claimant's mental illness and its impact on her memory and decision[-

16

]making process such that Claimant could be found to have not **deliberately** violated Employer's policy.

(Board's Br. at 20 (emphasis in original).) Last, the Board submits that, even if mental illness prevented Claimant from immediately reporting her arrest, the record does not contain evidence indicating how a mental illness prevented Claimant from reporting her arrest for nearly two years.

"In order to prove willful misconduct by showing a violation of employer rules or policies, the employer must prove the existence of the rule or policy and that it was violated." *Walsh*, 943 A.2d at 369. It is the employer's burden to show that the employee intentionally or deliberately violated the work rule or policy. *Chester Cnty. Charter Sch. v. Unemployment Comp. Bd. of Rev.*, 138 A.3d 50, 54 (Pa. Cmwlth. 2016). An inadvertent or negligent violation of an employer's rule may not constitute willful misconduct. *Id.* Moreover, "[q]uestions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Serrano v. Unemployment Comp. Bd. of Rev.*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (quoting *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1388 (Pa. 1985)).

In this case, the Board did not credit Claimant's testimony that she was stressed and forgot to immediately report her arrest to Employer. The Board determined that the "argument lacks merit, as [Claimant] only reported [her felony arrest] when she [knew] an FBI criminal background check was forthcoming which would be disclosed to [] Employer." (Referee's Decision at 3.) This Court may not disturb that credibility determination. *Serrano*, 149 A.3d at 439. Moreover, even if we would accept as true Claimant's argument that she did not deliberately violate Rule 22 "because she forgot to report [her arrest] because of her mental illness[,]" (Claimant's Br. at 30), that argument fails to explain why Claimant did not report

her arrest for **21 months**. Thus, Claimant has not offered a compelling reason why this Court should overturn the determination of the Board that Claimant deliberately violated Rule 22.

    C. Remoteness Doctrine

Claimant contends that the remoteness doctrine precludes the Board from denying her benefits because Claimant notified Employer that she had been arrested on January 28, 2020, and Employer did not terminate her until February 17, 2020. (Claimant's Br. at 34.) The "almost three weeks" between Claimant notifying Employer of her arrest and her discharge "establishes that [] Employer did not think [] Claimant was guilty of misconduct warranting discharge but rather felt compelled to discharge her because of its mistaken application of [the] OAPSA . . . ." (*Id.* at 35.)

The Board responds that the remoteness doctrine is inapplicable because the time between Employer's confirmation of Claimant's arrest and her discharge was not substantial. Specifically, the Board explains that Employer received the results of Claimant's background check on February 6, 2020, which confirmed her March 2018 arrest, and 11 days later Employer terminated Claimant. According to the Board, a delay of 11 days is not substantial compared to the 25 days that this Court found was substantial in *Tundel v. Unemployment Compensation Board of Review*, 404 A.2d 434, 436 (Pa. Cmwlth. 1979). Also, the Board points out that the termination notice shows that in order for an employee to be disciplined, her supervisor and department head, and also HR, must authorize the discipline. (Board's Br. at 23.) Thus, there was not unexplained substantial delay.

18

The remoteness doctrine provides that "[a]n incident of willful misconduct cannot be so temporally remote from the ultimate dismissal and still be the basis for a denial of benefits." *Tundel*, 404 A.2d at 436. The doctrine prevents an employer from seeking a denial of benefits based on willful misconduct only "where there is an **unexplained** substantial delay between the claimant's misconduct" and his or her discharge. *Raimondi v. Unemployment Comp. Bd. of Rev.*, 863 A.2d 1242, 1247 (Pa. Cmwlth. 2004) (emphasis in original). An employer can explain a "substantial delay" with evidence indicating that it was investigating the employee's willful misconduct or undertaking an administrative review process during the time between learning of the employee's conduct and termination. *Weingard v. Unemployment Comp. Bd. of Rev.*, 26 A.3d 571, 576 (Pa. Cmwlth. 2011).

The remoteness doctrine is inapplicable because we cannot say that, under the standard set forth in *Tundel*, Employer's delay in terminating Claimant was substantial. Twenty days elapsed between Claimant notifying Employer about her arrest and Employer terminating Claimant. Based on a simple comparison – 20 days here versus 25 days in *Tundel* – Employer in this case acted more quickly than the employer in *Tundel*, which militates against a finding that Employer's delay in this case was substantial. Moreover, there is evidence indicating that, during the 20-day period, Employer was investigating Claimant's willful misconduct or undertaking an administrative review process. *Weingard*, 26 A.3d at 576. The Board rightly places importance on Employer's confirmation of Claimant's arrest using the FBI background check, which was completed on February 6, 2020. In Claimant's termination notice, (C.R. at 134), Employer specifically mentions the FBI background check, its date, and the results thereof, which suggests that Employer was indeed awaiting the results of that investigation before taking disciplinary

19

action. After Employer received the FBI background check results on February 6, it terminated Claimant 11 days later, a time period we cannot say was substantial. Moreover, there is record evidence that, before Employer could take a disciplinary action against an employee, multiple layers of authorization were necessary. The termination notice includes spaces for the signatures of an employee's supervisor, department head, and an HR representative. Here, although each of the signatures is dated February 17, 2020, we draw the reasonable inference that each of the individuals that signed the termination notice discussed how to proceed over the course of the 20 days between the date Claimant notified Employer about her arrest and the date upon which she was terminated. Accordingly, though we find Employer's delay in terminating Claimant insubstantial under *Tundel*, even if it would be considered substantial, it was not unexplained. *Raimondi*, 863 A.2d at 1247.

### D. Progressive Discipline

Claimant contends that the Board capriciously disregarded the section of Employer's Discipline Policy setting forth the "guidelines for progressive discipline," (C.R. at 130-31), which is the "touchstone for a proper and full evaluation" regarding how Rule 22 is applied, (Claimant's Br. at 16). Claimant states that Rule 22 "require[s] [] Employer to exercise discretion on what disciplinary action it should impose" and the section of the Discipline Policy providing guidelines for progressive discipline "is the guiding principle that [] Employer has to consider to determine appropriate disciplinary actions." (*Id.* at 17.) Claimant argues that Employer acted unreasonably by not considering the progressive discipline guidelines when deciding how to discipline Claimant for

violating Rule 22, (*id*. at 18-19), and the Board capriciously disregarded those guidelines by not considering them at all, (*id*. at 16).

Claimant returns to this argument later in her brief, stating that "[t]he language of Rule 22 [] requires the exercise of discretion [about] which sanction to impose[,] and the progressive disciplinary policy, [the] underlying policy [of which] is based upon providing notice and the opportunity to correct behaviors, makes clear that discharge was unreasonable under the totality of circumstances." (*Id*. at 32.) Claimant argues that Employer's decision to terminate Claimant was not "fair, just, and appropriate[,]" (*id*. at 33 (quoting *Caterpillar*, 703 A.2d at 456-57)), and Employer should have exercised its discretion and applied less severe discipline using the "roadmap of factors" set forth in *Peake*, 132 A.3d at 521, (Claimant's Br. at 32-33).

In response, the Board contends that Employer did, in fact, exercise discretion and points out that, while *Peake* sets forth factors that an employer can consider when taking disciplinary action, it does not mandate that employers apply certain factors; *Peake* did not "create a 'roadmap' employers are required to travel." (Board's Br. at 15.) According to the Board, *Peake* does not prevent employers from considering an employee's criminal history, and the Board notes that *Peake* stated that employers "'should not be required to employ a person with a criminal record.'" (*Id*. at 16 (quoting *Peake*, 132 A.3d at 522)). The Board submits that "Employer set its policy as to who to employ, or not [to] employ, and it is not the role of the Board or the Court to become super-employers and override Employer's policy." (*Id*.)

There is nothing in Employer's Discipline Policy or in the specific language of Rule 22 that required Employer, after being notified that Claimant had been arrested, from imposing discipline other than termination, such as a warning. This

21

is consistent with the Board's finding that "[t]here is [] no requirement that [] Claimant be warned, as the [Discipline Policy] provides for up to immediate termination." (Referee's Decision at 3.) This finding is conclusive if it is supported by substantial evidence. *W. & S. Life Ins. Co.*, 913 A.2d at 334 n.2. The clear language of Rule 22 supports the Board's finding. It provides that "[i]f an employee is arrested, but does not report it to [HR] [], it would violate [Rule 22] and would be grounds for suspension and/or disciplinary action up to and including termination." (C.R. at 132.) While the Disciplinary Policy is structured to allow progressive discipline, it does not require it.[9] Moreover, we cannot say that Employer in this case did not exercise its discretion, and consider other, lesser forms of discipline, simply because Employer ultimately decided to discharge Claimant.

Last, based on our review of *Peake*, we agree with the Board that *Peake* does not require an employer to consider specific factors when considering disciplinary action against an employee, and there are no findings of fact in this case supporting Claimant's assertion that Employer understood that it had to terminate Claimant based upon the OAPSA. In *Peake*, the petitioners challenged the constitutionality of a provision of the OAPSA that banned individuals convicted of certain enumerated crimes from employment for life in facilities covered by the OAPSA. Specifically, the petitioners contended that the provision at issue made "no provision for consideration of any other factor, such as the nature of the crime, the facts surrounding the conviction, the time elapsed since the conviction, evidence of the individual's rehabilitation, and the nature and requirements of the job." *Peake*, 132 A.3d at 521. The Court found the lifetime employment ban unconstitutional "on its

---

[9] In addition, we note that "[t]here is no requirement in the Law . . . that an employee be first warned that a deliberate violation of an employer's work directive could result in termination." *Graham v. Unemployment Comp. Bd. of Rev.*, 840 A.2d 1054, 1058 (Pa. Cmwlth. 2004).

face." *Id.* Contrary to Claimant's assertion, this Court in *Peake* did not articulate a "roadmap of factors" for employers to follow when taking disciplinary action, (Claimant's Br. at 32), but merely agreed with the petitioners that a statutory provision that stripped employers of discretion, preventing them from "evaluat[ing] applicants with criminal records on a case-by-case basis[,]" was unconstitutional. *Peake*, 132 A.3d at 521-22.

## III.    Conclusion

Accordingly, for the foregoing reasons, we conclude that Employer met its burden of demonstrating Claimant was discharged for willful misconduct. Specifically, Employer demonstrated that it has a policy requiring employees to immediately report arrests, of which Claimant was aware, that Claimant deliberately violated, and that Claimant was discharged pursuant to the policy because she waited 21 months to report an arrest to Employer. Thus, Claimant is ineligible for UC benefits pursuant to Section 402(e) of the Law.

 

 

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marysol Reices,                              :
                              Petitioner     :
                                             :
              v.                             :    No. 762 C.D. 2020
                                             :
Unemployment Compensation Board              :
of Review,                                   :
                              Respondent     :
                                             :

# **O R D E R**

**NOW**, May 14, 2021, the Order of the Unemployment Compensation Board of Review dated July 10, 2020, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge